UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXANDER RAY THURSTON, *individually and on behalf of others similarly situated*,

                             Plaintiff,

                -v-

FLYFIT HOLDINGS, LLC (d/b/a FLYFIT GLOBAL), and BRIAN CHAPPON,

                             Defendants.

18 Civ. 9044 (PAE) (SN)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Alexander Ray Thurston commenced this lawsuit to seek relief for the alleged failure of defendants FlyFit Holdings, LLC ("FlyFit"), and Brian Chappon to keep proper records and pay Thurston for hours that he had worked, as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL"). The parties ultimately reached a settlement agreement (the "Agreement") providing for a total award of $14,000. On June 26, 2019, the Court approved the proposed Agreement and dismissed the case with prejudice. Defendants have since defaulted on their obligations under the Agreement. Before the Court is Thurston's motion to enforce the Agreement, or, in the alternative, to reinstate the case in its entirety. For the reasons that follow, the Court denies that motion in full.

**I.    Background**

The underlying lawsuit is an action for unpaid wages and overtime under the FLSA and NYLL. From December 1, 2017 until on or about May 1, 2018, Thurston was employed by defendants as executive assistant to FlyFit's CEO. *See* Dkt. 1 ("Compl.") ¶¶ 4, 27–28. The

Complaint alleged that defendants failed to compensate Thurston appropriately for the hours he worked, to pay his wages on a timely basis, and to maintain adequate records of his efforts. *See id.* ¶¶ 5–7; *see also id.* ¶¶ 50–55, 59–61. The Complaint alleged that defendants had informed Thurston that he would be a salaried employee, earning $75,000 per year, but in fact they paid him far less than that. *See id.* ¶¶ 31–35. Specifically, the Complaint claimed that Thurston was paid $3,600 for his work between December 1, 2017 and February 6, 2018; $2,750 between March 8, 2018 and April 18, 2018; and nothing between April 18, 2018 and the end of his employment around May 1, 2018. *See id.* ¶¶ 32–35; *see also* Dkt. 27 ("Settlement Ltr.") at 1–2. The Complaint further alleged that defendants required Thurston to purchase DocHub Software, a "tool of the trade," with his own funds and without reimbursement. *See* Compl. ¶¶ 40, 56–58; *see also* Settlement Ltr. at 2.

On June 14, 2019, the parties filed the proposed Agreement, *see* Dkt. 27-1 ("Agreement"), along with a letter asking that the Court approve the Agreement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *see* Settlement Ltr. at 1. The Agreement included a provision stating that the parties "ask the Court to retain jurisdiction for settlement enforcement purposes." *See* Agreement ¶ 2. It also provided that the parties consented to personal jurisdiction in this District. *See id.* ¶ 7. On June 26, 2019, the Court, via a memo endorsement of the parties' Settlement Letter, stated that it "approve[d] the attached settlement agreement pursuant to *Cheeks* and dismisse[d] this case with prejudice," and directed the Clerk of Court to close the case. *See* Dkt. 28. The order did not state, however, that the Court was retaining jurisdiction over enforcement of the Agreement, and the parties did not, then or later, ask the Court to include any such language in its order.

Thurston represents that defendants have since defaulted on their obligations under the Agreement. *See* Dkt. 31 ("Pl. Mem.") at 1. On September 24, 2019, Thurston filed a letter asking that the Court reopen the case for his anticipated motion to enforce the Agreement. Dkt. 29. On September 2, 2019, the Court reopened the case to set a briefing schedule for the motion, with Thurston's motion due October 11, 2019, defendants' opposition due October 25, 2019, and Thurston's reply due November 1, 2019. Dkt. 30. On October 11, 2019, Thurston filed his motion asking that the Court enforce the Agreement and award him the costs and fees associated with that motion, or, in the alternative, reinstate the action. *See* Pl. Mem. at 2. Defendants never filed any opposition.

## II.     Discussion

### A.     Applicable Legal Standards

"Actions to enforce settlement agreements are, in essence, contract actions which are governed by state law and which do not themselves raise a federal question unless the court which approved the settlement retained jurisdiction." *LaBarbera v. Dasgowd, Inc.*, No. 03 Civ. 1762 (CPS), 2007 WL 1531895, at *2 (E.D.N.Y. May 22, 2007). The basis for subject matter jurisdiction in this context "may be found in the doctrine of ancillary jurisdiction, which allows a district court to decide matters that are 'factually interdependent' with another matter before the court, or to take actions necessary 'to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994)).

To retain ancillary jurisdiction to enforce a settlement agreement, "a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order." *Id.* (citing *Kokkonen*, 511 U.S.

at 381). In such cases the district court "necessarily makes compliance with the terms of the settlement agreement a part of its order so that a breach of the agreement would be a violation of the order." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 305 (2d Cir. 2014) (brackets and internal quotation marks omitted) (quoting *Roberson v. Giuliani*, 346 F.3d 75, 82 (2d Cir. 2003)). As a result, the court may "enforce the settlement as an exercise of its ancillary jurisdiction.'" *Id.* (quoting *Kokkonen*, 511 U.S. at 380).

Significant here, a court's "mere awareness and approval of the terms of [a] settlement agreement do not suffice to make them part of [its] order." *Kokkonen*, 511 U.S. at 318. Rather, the Second Circuit has held, a court cannot retain jurisdiction simply by "plac[ing] its 'judicial imprimatur' on the agreement." *Hendrickson*, 791 F.3d at 358–59 (citation omitted); *cf. id.* at 360–61 (finding court's post-dismissal so-ordering of settlement agreement insufficient to retain jurisdiction over enforcement). As a result, where approval orders lack language explicitly expressing intent to retain jurisdiction or to incorporate the terms of the parties' settlement agreement, courts generally decline to enforce settlement agreements. *See, e.g.*, *StreetEasy*, 752 F.3d at 305 (dismissal order lacking explicit reference to retaining jurisdiction or incorporating terms "merely acknowledge[d] the existence of the settlement that precipitated the dismissal" and did not confer jurisdiction to enforce it); *Sanchez v. Charity Rest. Corp.*, No. 14 Civ. 5468 (HBP), 2019 WL 4187356, at *2 (S.D.N.Y. Sept. 4, 2019) (court approved FLSA and NYLL settlement pursuant to *Cheeks*, but court's recitation of material terms of settlement in open court, inquiry into fairness of that settlement, and inclusion of material terms of settlement agreement in the order of dismissal did not render the terms of the agreement "incorporated" for ancillary jurisdiction purposes); *Melchor v. Eisen & Son Inc.*, No. 15 Civ. 113 (DF), 2016 WL 3443649, at *8 (S.D.N.Y. June 10, 2016) (court's memo endorsement of

counsel's letter submission requesting approval of FLSA and NYLL settlement did not "incorporate" terms into its order); *Mao v. Mee Chi Corp.*, No. 15 Civ. 1799 (JCF), 2016 WL 675432, at *1 (S.D.N.Y. Feb. 11, 2016) (no ancillary jurisdiction in FLSA case where court approved settlement agreement pursuant to *Cheeks* and order of dismissal lacked explicit reference to either *Kokkonen* requirement).

The parties' stipulation to the personal jurisdiction of the district court that approved the settlement similarly has no bearing on whether the court has retained ancillary jurisdiction over enforcement. *See Melchor*, 2016 WL 3443649, at *8 ("[T]he salient question is generally not whether the court has *personal* jurisdiction over the parties . . . but whether it retains *subject matter* jurisdiction over the dispute arising from the settlement agreement's breach, given the limited nature of federal subject matter jurisdiction." (emphasis in original) (citing *Kokkonen*, 511 U.S. at 377–78)). Stipulation to the district court's subject matter jurisdiction over enforcement proceedings is similarly futile. *See id.* ("Subject matter jurisdiction, unlike personal jurisdiction, cannot be created by agreement, consent, or any other act of a party."); *see also Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant[.]").

### B. Application

Applying the above standards, the Court, regrettably, cannot find a valid basis for federal jurisdiction for the enforcement of the Settlement Agreement at issue. The Memo Endorsement of the parties' Settlement Letter did not expressly retain jurisdiction to enforce the Agreement or incorporate the Agreement's terms into the order of dismissal. It was silent on that point. And a court's "so-ordering" of such a submission merely confirms that "the terms of the proffered Settlement Agreement were fair, reasonable, and adequate." *Melchor*, 2016 WL 3443649, at *8

(finding no jurisdiction with similar endorsement of counsel's letter).  Approval of settlement agreements pursuant to *Cheeks* alone is likewise insufficient to give rise to ancillary jurisdiction. *Mao*, 2016 WL 675432, at *1.  Indeed, even if the Memo Endorsement had been affixed not to the Settlement Letter but to the underlying Agreement itself, the "incorporation effect" of this form of approval is an open question in this Circuit.  *See Hendrickson*, 791 F.3d at 361 (declining to take position on legal effect of "so-ordering" settlement agreement prior to district court's order of dismissal).

Thurston notes that the parties' Agreement "ask[ed] the court to retain jurisdiction of this matter for settlement enforcement purposes."  *See* Agreement ¶ 2.  However, the request reflects the parties'—and not this Court's—posture with respect to ancillary jurisdiction.  Thurston would have been better served by submitting, for the Court's signature, a proposed stipulation and order of dismissal, containing language consistent with that which *Kokkonen* held necessary to confer ancillary jurisdiction over enforcement.  *See Dannhauser v. TSG Reporting, Inc.*, No. 16 Civ. 747 (CM) (DF), 2019 WL 2950142, at *7 (S.D.N.Y. June 21, 2019) (finding such jurisdiction where court signed proposed voluntary stipulation of dismissal, which operated as an order of dismissal and provided that "[t]he Court hereby retains jurisdiction for the purposes of enforcing the parties' confidential Settlement Agreement and General Release"); *Jean v. Auto & Tire Spot Corp.*, No. 09 Civ. 5394 (ARR) (RLM), 2013 WL 2322834, at *4 (E.D.N.Y. May 28, 2013) (same where court signed proposed stipulation and order of dismissal expressly retaining jurisdiction); *see also Melchor*, 2016 WL 3443649, at *8 & n.10 (distinguishing between so-ordering of letter requesting approval of settlement (no jurisdiction) agreement and settlement agreement itself (open question as to jurisdiction)).

Finally, the fact that the Agreement at issue here contains a clause consenting to personal jurisdiction in this District, *see* Agreement ¶ 7, does not change the ancillary jurisdiction analysis. *See Melchor*, 2016 WL 3443649, at *8.

The Court therefore declines to enforce the settlement for lack of jurisdiction. Thurston is at liberty, of course, to pursue enforcement of the Agreement, like any contract, in a state court of competent jurisdiction. *See Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 40–41 (2d Cir. 1996) ("[E]nforcement of a settlement agreement is for the state courts . . . . There is no injustice in applying *Kokkonen* in this case. Plaintiff has only chosen the wrong forum; there are remedies available in New York State courts.").

As an alternative to an order enforcing the settlement, Thurston requests that this Court "reinstate the case in its entirety." Pl. Mem. at 2. However, the Court's June 26, 2019 order dismissed this case with prejudice. A dismissal with prejudice constitutes a "final adjudication on the merits favorable to defendant." *Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir. 1986). A dismissal with prejudice thus operates to trigger *res judicata*. *See* 9 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2367 (3d ed.) ("A dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata and is effective not only on the immediate parties to the action but also on their privies."). As such, all relevant issues actually litigated and decided, and all relevant issues that could have been litigated, can no longer be litigated in this suit. *Nemaizer*, 793 F.2d at 61. Therefore, the Court cannot re-open this case for further litigation.

## CONCLUSION

For the foregoing reasons, Thurston's motion is denied for lack of subject matter jurisdiction. The Clerk of Court is respectfully directed to terminate the motion pending at docket 31 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: June 3, 2020
       New York, New York